Both counsel the case is taken under advisement. We move to the fifth case, Scheurer v. Fromm Family Foods. Ms. Goyert Good afternoon, Your Honor. May it please the Court. My name is Catherine Goyert and I represent the appellant from Fromm Family Foods. Your Honors, Ms. Scheurer agreed to arbitrate all claims related to or arising out of her Remedy employment. Remedy, a staffing agency Who's the employer in the agreement? Your Honor, the employer in the agreement is Remedy, the staffing agency. But Remedy, as a staffing agency, assigned Ms. Scheurer to work for its client, Fromm. Ms. Scheurer now seeks to skirt that arbitration commitment that she agreed to by filing Can you direct us to any other cases where the party seeking to compel arbitration did not know of the existence of the agreement until suit was filed? Your Honor, the Second Circuit's decision in Ragone v. Atlantic Video is analogous to the case at hand. In that case, it's not clear as to whether the non-signatory was aware of the agreement or not, but the Second Circuit held that that didn't matter. That's not my question. Can you direct us to any other cases? Your Honor, I cannot direct you to a case directly on point, no. However, this Court should reverse the district court and compel arbitration for two reasons here. First, on the basis of equitable estoppel, as Ms. Scheurer has asserted, substantially interdependent and concerted misconduct between Fromm and Remedy. And second, on the basis of What's her gripe with Remedy? Your Honor, it's clear from the record, in particular the record on page 128, Ms. Scheurer's theory of the case here is that Remedy, her staffing agency, and Fromm, the client company to which Ms. Scheurer was assigned to work by Remedy, conspired together. That they acted as one. They conspired together to terminate her employment with Fromm. And that she also asserts that they were joint employers. That they acted together as her co-employers during this joint Remedy-Fromm employment. None of these arguments were raised in the district court, so far as I can tell. This agency argument? Your Honor, yes they were. In Fromm's initial motion to compel, Fromm focused on the equitable estoppel issue as well as the agency. Really focusing on this joint employment relationship. I didn't see any discussion about agency as a basis for enforcing the arbitration clause against this plaintiff. I saw equitable estoppel and third-party beneficiary arguments. And that's what the court resolved. I'm happy to point you to the case in the record. We did also bring the issue of agency as well. So we raised three issues for the court. Equitable estoppel, agency, and third-party beneficiary. At this point, Fromm is relying on equitable... Where's agency? Your Honor, I will turn to that. Your Honor, within... Excuse me, I'm on page 10, which is page 42 of the record. Fromm focuses on this co-employer relationship. This co-employer relationship is the agency relationship that compels arbitration here. Ms. Schor... Co-employers don't have to be each other's agents, do they? Not necessarily, Your Honor. Not necessarily. But here the facts show that Ms. Schor is filing a lawsuit against Fromm. She worked there due to her assignment from Remedy. She is asserting that they acted together as her co-employers to end her work assignment and that they acted together as joint employers. Indeed, she asserts that her Remedy application and the Remedy employment agreement, the handbook as well, continue to apply to her during her Fromm assignment. But she also alleges that Fromm supervised her, control of terms and conditions of her employment, and control her hours and pay. This court should adopt a substantially interdependent and concerted misconduct theory of equitable example to compel arbitration. It's not a question of state law. In your brief, the district judge made clear he was citing the Arthur Anderson case, the effect that these are really matters of state law. Your brief, your opening brief, didn't even bother to cite Arthur Anderson, and your reply brief seems to have mixed up the holdings and dicta in Arthur Anderson, where you say, In Arthur Anderson, the court expressly held that we have said many times that federal law requires that questions of arbitrability be addressed with healthy regard for the federal policy favoring arbitration. And what the Supreme Court said in the rest of that, the next line of that footnote, is whatever the meaning of this vague prescription, it cannot possibly require the disregard of state law permitting arbitration, et cetera. And what was held was that state law controls the question, and I didn't frankly see much of that. Your Honor, yes, Arthur Anderson did discuss that state law may allow non-signatory compel arbitration. Federal courts have continued to use federal and state law. However, You've cited on that point in your reply, you cited Apple iPhone, right? Yes, Your Honor. And BMO Harris and Henry Tex, right? Yes, Your Honor. All three of which denied arbitration, right? Yes, Your Honor. And I didn't see any of them actually applying federal law. Maybe I missed it. Your Honor, they did analyze under federal law. They did not apply. However, even if this court chooses to apply state law, this court nevertheless should compel arbitration. Wisconsin courts have adopted the strong policy favoring arbitration, much like the federal courts have. And while Wisconsin courts have not dealt with this issue of whether a non-signatory may compel arbitration under estoppel based on No, it's Wisconsin contract law, not Wisconsin arbitration law that informs the question here. So it doesn't matter that Wisconsin likes arbitration, too. What matters is whether the Wisconsin contract law principle of equitable estoppel is satisfied here. And you haven't identified anything that the plaintiff here did to induce your client, the grocery store, to rely on the arbitration clause that, as far as we know, they didn't even know about. Right, Your Honor. So it's just impossible to get equitable estoppel under these circumstances. Your Honor, the courts have held, though, that beyond the reliance theory and beyond the intertwined contract theory this court set forth in Hughes v. Grader-Clark, that when we're talking about a non-signatory compelling arbitration, we can look at this alternative theory of equitable estoppel, where the plaintiff alleges Sorry, under Wisconsin law? Wisconsin has not addressed this issue, Your Honor. However, there's no reason, there's no indication from Wisconsin courts that they would not be open to adopting this theory of estoppel. Well, Wisconsin has a theory of estoppel. Every state in the Union does. And you have to prove that the plaintiff here did something, took action, that induced your client to rely on an arbitration clause. And you just have not carried your burden of showing that here because, so far as we understand, your client didn't even know about the arbitration clause. Your Honor, and that's correct in applying the reliance theory of estoppel. Fromm's position here is that both federal courts and Wisconsin courts would adopt the substantially interdependent and concerted misconduct theory of estoppel here. Every other circuit court that has faced the issue of whether to adopt this theory of estoppel when faced with whether a non-signatory can compel arbitration has chosen to do so. No circuit court has faced this theory of estoppel and declined to adopt it. I can see that. But the employee doesn't, as Judge Sykes has mentioned twice, and I'll mention it three times, didn't know anything about arbitration. How can you force somebody to say, well, you ought to arbitrate. You should have known that arbitration was involved. Your Honor, Ms. Schwartz's agreement of remedy stated that she will arbitrate every claim related to or arising out of her remedy employment. With the employer. With the employer, yes, Your Honor. However, other circuits, when faced with this issue, have held that because of the intertwined relationship. Have those cases dealt with situations in which the employee sues only the non-signatory? No, Your Honor. I mean, your argument is a lot stronger if they're both named as defendants. But if she doesn't think remedy did anything wrong, the whole problem was sexual harassment by a manager at Fromm's that Fromm refused to respond to adequately. It seems like a different situation. Your Honor, Ms. Schwartz's theory of the case is clear that she thinks Fromm did engage in wrongdoing. But what's more is this court should not allow Ms. Schwartz to skirt her commitment by filing a lawsuit solely against Fromm. If she were to file a case. She's supposed to file against somebody she doesn't think did anything wrong? Your Honor, it's clear from the record that she does believe that remedy conspired with Fromm to fire her. Did she use that word? Yes, Your Honor. Conspired. Page 128 of the record, she says that remedy and Fromm conspired to fire her. While she uses artful pleading to try and litigate this claim, she already agreed to arbitrate. This court should not open the door for temporary workers. She agreed to arbitrate, not with where the problem arose, that is with the sexual issue that employer involved with. The other one didn't have anything with regard to sex except firing. Your Honor, in addition to allegedly conspiring with remedy, or excuse me, with Fromm to fire her, in order to assess Ms. Schwartz's harassment claims, we necessarily are going to have to take a look at this arbitration agreement, which includes discrimination and harassment procedures, and informs Ms. Schwartz if you experience discrimination or harassment at a client site, you need to come to us, remedy, and report it. So litigation of Ms. Schwartz's claims necessarily will entail an analysis of whether she followed that procedure, whether remedy ended the work assignment, whether remedy conspired with Fromm to fire Ms. Schwartz, and any post-Fromm work assignment. If remedy isn't a defendant here, why will you have to litigate those things? Your Honor, we will be required to litigate these things to figure out who ended the work assignment. Why was that work assignment ended? What were those conversations between Fromm and remedy that ended the work assignment, or led to the end of the work assignment? Did Ms. Schwartz report harassment to remedy? Remedy may... Why does all that matter to a Title VII claim? It might matter to a breach of contract claim. But this is a Title VII claim. She's suing for the conduct of her supervisor and for the termination. She's got to prove that there was an employment relationship recognized for purposes of statutory Title VII law. But I don't know why any of that has to do with what's in the arbitration clause. Your Honor, one of Fromm's affirmative defenses for this harassment claim will be,  Who was aware of it? Well, suppose she didn't. I'm sorry, Your Honor. Suppose she did report it. Didn't report it. Didn't report it. We won't know that, Your Honor, until we litigate. Right, and that's a prerequisite for holding an employer liable for harassment, or it sometimes is, not always, but it sometimes is. So as a matter of Title VII law, that may be an issue. But that has nothing to do with what the arbitration clause says. I thought we knew that Fromm acknowledged that something had happened to cause it to discipline the supervisor in question, but it refused to separate the two in the workplace. Sounds to me like at least some attempt to complain, report, et cetera, necessarily must have happened. Yes, Your Honor, that is correct. However, Ms. Schor alleges complaints of harassment beyond just that singular incident, which Fromm did investigate and address. And the circuits that have dealt with this theory of equitable estoppel have not focused solely on the arbitration commitment, but rather the relationship between the plaintiff, the non-signatory, and the signatory. Allowing Ms. Schor to litigate these claims will necessarily bring remedy in as a party in name. Are you going to name them? No, Your Honor, but in essence, they're required participation. They will result in the loss of time and money that they sought to avoid by entering into this arbitration commitment. In courts such as the Second Circuit, when dealt with an analogous co-employer case, where, to your point, that plaintiff did file against both parties, the underlying theory remains the same. Ms. Schor started her employment. We don't very often look to non-parties and consider what costs they incurred. But, Your Honor, the linchpin of equitable estoppel is fairness, and Ms. Schor is using this artful pleading to litigate her employment claims that arose directly from her remedy employment. By virtue of remedy's status as a staffing agency, Ms. Schor's employment with remedy necessarily entailed assignments to its clients. In fact, that's her sole purpose of being part of the staffing agency. All of her employment claims were going to arise during these client assignments. She knew that when she entered into this arbitration agreement, and yet she agreed to arbitrate all claims related to or arising out of her remedy employment. Thank you, counsel. Mr. Sultan. Good morning. May it please the Court, I am William Sultan, and I represent the plaintiff appellee, Ann Schor, in this case. Let me begin by clearing up some factual errors that I think exist. The reference to the word conspire that was used by the appellant in this case was referring to a letter that I sent to the Department of Workforce Development in support of an unemployment insurance claim that Ms. Schor had filed. At the time of that particular claim, obviously we didn't know as much information as we do now. As the Court knows, before Ms. Schor could even file in court, she had to file a claim first with the Equal Rights Division of the State of Wisconsin, which has a work-sharing agreement with the U.S. Equal Employment Opportunity Commission. There was an investigation there which resulted in a right-to-sue letter and resulted in this lawsuit that was filed. In the lawsuit that was filed, we do not claim that remedy intelligence staffing conspired with from. The second factual error that I think is important to point out is the Court should take a look at Richard Best's declaration. There's no dispute in this case that Ms. Schor complained to superiors at From Family Foods. There's no dispute in this case that From Family Foods undertook an investigation and disciplined the supervisor, presumably because they determined that it was true. There's also no dispute in this case that following that investigation, they told remedy to end Ms. Schor's employment. That caused her to be fired. So I'm not sure where they're coming from in terms of the amount of money that's going to be spent by remedy litigating this case. The facts are pretty much already there. The Court is correct that Wisconsin law applies. Arthur Anderson v. Carlisle at page 631 says that. It talks about traditional principles of state law. Wisconsin doesn't have this intertwinedness theory, and so this Court should reject that argument. Wisconsin also, I don't believe, has the agency theory, and they certainly haven't cited any case to that effect, so the Court should reject that as well. Wisconsin does have an equitable estoppel theory, but there's no reliance here, as the district court pointed out. Wisconsin also has a third-party beneficiary standard, but Wisconsin's standard is much higher. It has to be entered in directly and primarily for the benefit of the third party, which is simply not the case here, and really shouldn't even make that argument. This is simply a case where the district court did make findings of fact, I think applied the appropriate standard. The district court's conclusion is correct, that Fromm simply hasn't carried its burden, and the Court should affirm the district court. If there are any other questions that I can answer, I'm happy to answer them. Otherwise, I'll take my seat. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.